UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DIAMOND OFFSHORE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-1701 |
| | § | |
| SURVIVAL SYSTEMS INTERNATIONAL, INC., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Pending before the court are (1) defendant/counter-plaintiff Survival Systems International, Inc.'s ("SSI") motion for partial dismissal (Dkts. 5, 15); (2) plaintiff/counter-defendant Diamond Offshore Company's ("Diamond") motion for partial dismissal of ISS's counterclaim (Dkt. 8); and (3) Diamond's motion for a hearing (Dkt. 21). Having considered the motions, responsive filings, and the applicable law, the court is of the opinion that SSI's motion to dismiss (Dkts. 5, 15) should be GRANTED; Diamond's motion to dismiss (Dkts. 8, 20) should be GRANTED IN PART AND DENIED IN PART; and Diamond's motion for a hearing (Dkt. 21) should be DENIED.[1]

**I. BACKGROUND**

SSI is in the business of designing and manufacturing lifeboat equipment, including the hooks that secure lifeboats to ships. Dkt. 6. Due to a concern that conventional twin-fall lifeboat hooks were inadequate and required substantial training and maintenance, SSI designed its Triple 5 lifeboat hooks to use the weight of the lifeboat to hold the hook closed, which SSI asserts is an

---

[1] Diamond requests an oral hearing on its motion to dismiss because "the issues are complex." Dkt. 21. None of the issues set forth in Diamond's motion is too complex to fully address via written briefing. Diamond, however, did not fully argue all of the issues it brought up—its initial motion was less than one page, and its reply brief was only 6 pages. *See* Dkts. 8, 20. While oral hearings are often helpful in complex cases, they are an inefficient use of the court's—and the parties'—time if the issues have not been fully briefed beforehand, which is unfortunately the case here.

inherently stable design that reduces the requirements for training and maintenance as compared to conventional hook systems.  Dkt. 6, Exh. 2.

Diamond, an offshore drilling contractor, purchased Triple 5 lifeboat hooks from SSI, and SSI installed or retrofitted the Triple 5 hooks on lifeboats on many of Diamond's mobile offshore drilling units ("MODUs"), including the *Ocean Ambassador*.  Dkt. 6.  On May 17, 2010, crew members of the *Ocean Ambassador*, which was off of the coast of Brazil, were conducting lifeboat drills, and four crewmembers were inside of one of Diamond's lifeboats that was equipped with the Triple 5 hooks.  Dkts. 6, 15.  While they were aboard, one of the Triple 5 hooks allegedly opened. Dkt. 6.  The lifeboat fell into the water below.  *Id.*  Two of the crewmembers on the lifeboat were killed, and two were injured.  *Id.*

The Brazilian Maritime Authority and the Brazil Navy investigated the accident.  Dkt. 15. Both Diamond and SSI allegedly participated and cooperated with the Brazilian authorities.  *Id.*  The Brazil Maritime Authority and the Brazil Navy issued written reports relating to the cause of the accident and recommendations for avoiding future accidents in March 2011.  *Id.*  SSI claims that these reports "exonerated the Triple 5 hooks as the cause of the accident."  *Id.*

The victims of the lifeboat accident filed claims against Diamond or its parent company, and Diamond settled the claims for approximately $2 million.  *Id.*  Diamond then filed this lawsuit against SSI seeking damages for breach of the contracts relating to the purchase of the Triple 5 hooks, breach of the express and implied warranties associated with the sale of the Triple 5 hooks, negligence and gross negligence in the design, manufacture, and sale of the Triple 5 hooks, negligent misrepresentation regarding the Triple 5 hooks, fraud, fraud in the inducement, and fraud by omission with regard to the representations made to Diamond about the Trips 5 hooks, strict liability

for alleged manufacturing and design defects in the Triple 5 hooks, declaratory relief, and attorneys' fees. Dkt. 6. Diamond requests, among other things, actual, direct, special, consequential, and incidental damages to compensate it for (1) losses relating to testing and replacement of the Triple 5 hooks installed on its lifeboats; (2) lost profits resulting from suspension of operations associated with the alleged failure of the hooks; and (3) amounts paid in settlement of claims associated with the alleged failure of the Triple 5 hooks. *Id.*

In its original answer, ISS moved for partial dismissal of Diamond's claims, noting that Diamond requested damages in connection with amounts it paid in settlement of the personal injury claims associated with the accident, and "Texas law does not recognize a common-law cause of action for indemnity in connection with personal injury claims." Dkt. 5. Diamond filed a response to ISS's motion to dismiss concurrently with an amended complaint, on July 15, 2011. Dkts. 6, 7. Diamond states that neither its original complaint nor its first amended complaint "seeks common-law indemnity from SSI."[2] Dkt. 7. Instead, Diamond asserts that its claims relate solely to "SSI's contractual breaches, negligent conduct, and intentional fraud," and that the damages it seeks are "classic *damages* claims" for these types of claims. *Id.*

SSI filed a counterclaim and first amended or supplemental counterclaim against Diamond, asserting various tort claims associated with an alleged defamatory statement or statements made by Diamond relating to SSI's Triple 5 hooks under California, Louisiana, Texas, and maritime law, and asserting a breach of contract claim under Texas and Louisiana law. Dkts. 5, 15. Diamond moves

---

[2] SSI filed an answer to Diamond's first amended complaint that also contains a first amended and supplemental counterclaim and a third-party demand. Dkt. 15. In the answer to the amended complaint, SSI states that the first amended complaint "fails to state any cognizable claims for which any relief can be granted under any applicable law," and it fully incorporates all "responses and facts set forth in its Answer to the Original Complaint." *Id.* The court construes this as a reassertion of its claim that Diamond failed to state a claim for common-law indemnity.

3

to dismiss the original and amended or supplemental counterclaim, arguing that the allegedly defamatory statement was, in reality, an internal safety alert that was completely true. Dkts. 8, 20. And, as for the other claims, Diamond argues that these claims are all based on the alleged falsity of the safety alert and must be dismissed because the safety alert does not contain false information. Dkt. 20.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a 12(b)(6) motion, the court must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Additionally, the court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 554 (internal citations omitted). The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.*

## III. ANALYSIS

**A.     SSI's Motion for Partial Dismissal**

SSI moves for dismissal of "all claims and damages sought in connection with any such claim or theory of common-law indemnity" because there is no common-law indemnity it Texas. Dkt. 5.  Diamond asserts that it does not seek indemnification and argues that, even if it did, "common-law indemnity is alive and well in Texas." Dkt. 7.  Indeed, neither the complaint nor the first amended complaint contains an overt claim for common-law indemnity. Dkts. 1, 6.  Instead, Diamond requests reimbursement for the amount it paid settling with the personal injury plaintiffs as an element of damages for its other claims—a request that could be construed as a disguised claim for indemnity. Dkt. 6.

First, the court notes that, contrary to SSI's assertion, common-law indemnity *does* still exist in Texas, but the circumstances under which it is available are extremely limited.  Because Texas has adopted a comparative negligence scheme, the "common law right of indemnity is no longer available between joint tortfeasors in negligence cases." *B&B Auto Supply, Sand Pit, & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 817 (Tex. 1980).  However, it is still available in cases where there is a contractual basis for indemnity, where one party's liability is purely vicarious, and in the innocent product retailer situation. *Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex. 1988); *B&B Auto Supply*, 603 S.W.2d at 817.  Generally, a relationship must be an agency or surety relationship to support vicarious liability; a contractual relationship alone is insufficient. *Astra Oil Co, Inc. v. Diamond Shamrock Ref. Co., L.P.*, 89 S.W.3d 702, 706 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Here, there is no indication in the first amended complaint that any of the exceptions apply. *See* Dkt. 6. The purchase contract, which the court may consider because it is attached to the first amended complaint, only refers to indemnity with regard to intellectual property issues, so the contractual indemnity exception does not apply. Dkt. 6, Exh. 1. The innocent product retailer exception also does not apply, as Diamond was not an innocent retailer in the marketing chain. *See* Dkt. 6. And, there is no indication that the vicarious liability exception should apply, as Diamond and SSI's relationship was purely contractual. *See id.*

Diamond argues that "Texas law allows for common-law indemnification when there is an adjudication of liability and the indemnitor admits liability," and that, as such, this issue cannot be determined until there is an adjudication on the merits. Dkt. 7. Diamond, however, misconstrues the case it cites for this proposition—*General Motors Corp. v. Hudiburg Chevrolet, Inc.*, 199 S.W.3d 249 (Tex. 2006). In *Hudiburg*, the Texas Supreme Court indeed stated that an "indemnitor must be liable for the product defect, and his liability must be adjudicated or admitted," but it made this statement immediately *after* stating that, "[u]nder the common law, a person is entitled to indemnity for products liability only if his liability is entirely vicarious and he is not himself independently culpable." *Hudiburg*, 199 S.W.3d at 255 (footnotes and citations omitted). Here, there is no relationship alleged that can give rise to total vicarious liability in the first instance, so whether the liability has been fully adjudicated is not relevant to the common law indemnification issue.

Thus, if Diamond were asserting an overt claim for common-law indemnity, it would have to be dismissed. However, rather than asserting a claim for "indemnity," Diamond asserts a claim for damages that SSI seems to allege is a disguised claim for indemnity. "Texas law defines indemnity as 'the payment of all of plaintiff's damages by one tortfeasor to another tortfeasor who

6

had paid it to the plaintiff.'" *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 360 (5th Cir. 2008) (citations omitted). If Diamond were awarded damages for its tort or contract claims that encompass the entire settlement, then the damage payment would fit this definition. Diamond argues, however, that its damage claim is a "classic *damages* claim" relating to SSI's alleged breach of contract, negligent contract, and intentional fraud—not a claim for indemnity. Dkt. 7. There are cases (from other jurisdictions) indicating that if the person seeking such damages has suffered independent harm as a result of the potential indemnitor's actions, then it may also seek the amount it paid in settlement that stemmed from those same actions because what the party is seeking "as an element of damages to recover amounts it has paid in settlement is not what defines its claims; the basis for liability is what defines the nature of its claims." *In re Cendant Corp. Sec. Litig.*, 166 F. Supp. 2d 1, 10 (D.N.J. 2001); *see In re Leslie Fay Cos., Inc. Sec. Litig.*, 918 F. Supp. 749, 765 (S.D.N.Y. 1996) (refusing to dismiss a negligent misrepresentation claim "based on the argument that it is an impermissible claim for indemnity in disguise"); *see also Cenco Inc. v. Seidman & Seidman*, 696 F.2d 449, 457-58 (7th Cir. 1982) (indicating an amount an auditing company paid to settle with the class of investors who relied on the audits to purchase stock in the audited company was "a permissible item of damages" for the auditing company's fraud claim against the company it audited). The briefing on this issue is, however, inadequate, and the court therefore prefers to address damages at a later stage of litigation. Accordingly, SSI's motion to dismiss Diamond's common-law indemnity claim—a claim that has not been asserted—is GRANTED. To the extent Diamond's claim for damages associated with its settlement of the death and personal injury claims may be construed as a claim for common law indemnity, the court reserves ruling until that issue has been more fully briefed or developed at trial.

**B.     Diamond's Motion to Dismiss**

SSI asserts various tort claims under Texas, California, and Louisiana law, including claims for defamation. Dkt. 15. It then "repeats and re-alleges each and every factual allegation made above" under the heading, "Count 4 – General Maritime Law," and states that "[o]ne or more of the causes of action set forth in Counts 1 through 3 above in favor of SSI are available to SSI under the general maritime law of the United States." *Id.* Diamond moves to dismiss SSI's defamation counterclaims under Texas, Louisiana, California, and, to the extent SSI asserts such a claim, maritime law, because it contends that the allegedly defamatory statement made by Diamond was not defamatory. Dkts. 8, 20.[3] Diamond also moves to dismiss SSI's other claims, contending that they are all based on the alleged falsity of the statement, and the statement is not false. Dkt. 20.

Under Texas, Louisiana, California law, a plaintiff does not state a claim for defamation if the statement at issue is not defamatory. Under Texas law, "[w]hether a publication is capable of the defamatory meaning alleged by the plaintiff is a question of law to be determined by the court." *Clemens v. McNamee*, 608 F. Supp. 2d 811, 826 (S. D. Tex. 2009). "The threshold question is therefore whether the complained of statements are reasonably capable of a defamatory meaning." *Id.* "A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491,

---

[3] SSI filed its original counterclaim on June 27, 2011. Dkt. 5. Diamond filed its motion to dismiss SSI's counterclaim on July 15, 2011. Dkt. 8. SSI filed a response on August 24, 2011. Dkt. 16. SSI filed an amended counterclaim concurrently with its response. Dkt. 15. On September 8, 2011, Diamond filed a reply, in which it asserts that SSI's amended complaint also does not state a claim for defamation. Dkt. 20. SSI has neither filed filed a surreply nor sought leave to do so. The court has analyzed the motion to dismiss in terms of whether the *amended* counterclaim is sufficient to assert a claim for defamation. *See* 6 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 1476 (2010) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

496 (Tex. App.—Dallas 2003, no pet.) (citing Tex. Civ. Prac. & Rem. Code. Ann. § 73.001 (Vernon 1997)). The statement must "be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000). Under Louisiana law, "a plaintiff, in order to prevail in a defamation action, must prove 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.'" *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997) (quoting *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993)). "The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is a question of law for the court, and is to be answered by determining whether a listener could reasonably have understood the communication, taken in context, to have been intended in a defamatory sense." *Bell v. Roddy*, 646 So. 2d 967, 972 (La. App. 1994). "A communication is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community or to deter others from associating or dealing with the person." *Id.* Under California law, "[d]efamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.'" *Price v. Operating Eng'rs Local Union No. 3*, 125 Cal. Rptr. 3d 220, 225 (Cal. Ct. App. 2011) (quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p. 782)). "Whether a statement is reasonably susceptible of a defamatory interpretation is a question of law for the court." *Gilbert v. Sykes*, 63 Cal. Rptr. 752, 768 (Cal. Ct. App. 2007).

Here, SSI rests its defamation claims on a safety update called a "Flash Alert" issued by Diamond on June 27, 2010. Dkt. 6, Exh. 3. The Flash Alert states that it is "a statement of <u>fact</u> intended for information only" and that the "underlying and root causes of the incident will follow

9

pending a formal incident investigation." *Id.* The Flash Alert instructs recipients to "[p]ass on this alert information to all personnel at pre-tour/safety meetings." *Id.* Then, it provides the following information:

> While conducting the Corporate Marine Audit it was discovered that the Triple 5 Hooks on Lifeboats #2 & #3 were open more than the manufacture's [sic.] recommendations. Upon further inspection the release handles inside the lifeboats had shifted from the vertical position of green (recommended) to a less than vertical position in to the red (release).
>
> Lifeboats were set on pennant wires and the Triple 5 Hooks were reset to correct positions. Lifeboats were winched onto main cables and Triple 5 Hooks with pennant wires still attached for safety, hooks will be inspected every (6) hours to verify hook positions until we can ascertain the stability of the Triple 5 Hooks.

*Id.* Photographs of the hooks and handles as well as a chart and photograph showing the proper positions were included with the Flash Alert. *Id.*

SSI claims that it received a copy of the Flash Alert "from another industry source" the next day. Dkt. 16. SSI asserts that it issued two notices regarding the hooks after receiving the Flash Alert that responded to the assertions in the Flash Alert, but Diamond "never issued a follow-up statement or follow-up alert." *Id.* SSI argues that the information in the Flash Alert was "materially false, misleading, intentionally deceptive, and designed to cause loss and damage to SSI" because even though the Flash Alert states that Diamond would follow up, and it later was in receipt of the report "which exonerated the Triple5 hooks," it failed to follow up. *Id.*

SSI's defamation claim is not plausible because the Flash Alert is not capable of defamatory meaning. First, the Flash Alert merely reports on a condition that was discovered on certain lifeboats, documents this condition with photographs, and provides instructions for monitoring the lifeboats, handles, and hooks. It does not provide false or misleading information. Second, while

10

the Flash Alert *does* state that the "underlying and root causes of the incident will follow pending a formal incident investigation," and the court must take SSI's allegation that Diamond did not follow up as true, the Flash Alert does not provide a timeframe for the follow up. It merely states that it would "follow pending a formal incident investigation." The Brazilian authorities concluded *their* investigation, but *Diamond* obviously has not determined that the Brazilian investigation served to "exonerate the Triple5 hooks," or it would not have filed this lawsuit. Moreover, the statement that Diamond would follow up is not defamatory on its face—it has nothing to do with SSI. Because nothing in the Flash Alert could reasonably be construed as having defamatory meaning, Diamond's motion to dismiss SSI's defamation claims under California, Texas, and Louisiana law is GRANTED, and these claims are DISMISSED WITH PREJUDICE.

With regard to general maritime law, the court notes that it is not its burden to comb through the facts alleged in SSI's counterclaim to determine what causes of action SSI may have under maritime law. SSI's general statement that some of the claims asserted under the laws of Texas, Louisiana, and California are also available under maritime law is not sufficient to state the claims under maritime law.

Moreover, even if SSI had more specifically indicated that it was asserting a claim for defamation under maritime law, the claim would fail for the same reason the claim fails under Louisiana, Texas, and California law—because the statement is not capable of defamatory meaning. Because there is not a "well-developed body of general maritime law of defamation," "the general maritime law may be supplemented by either state law . . . or more general common law principles." *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir. 1999). There is substantial diversity amongst the states with regard to defamation law, so the Fourth Circuit, which is the only circuit to address this issue,

has applied "general common law tort principles contained in the Restatement (Second) of Torts rather than the specific law of a single state." *See id.* The Restatement (Second) of Torts sets forth the following elements for a cause of action for defamation:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting to at least negligence on the part of the publisher; and
> (d) either actionability of statement irrespective of special harms or the existence of special harm caused by the publication.

Restatement (Second) Torts § 558. Thus, in order to be assert a claim for defamation under maritime law, the statement put at issue by a plaintiff must be defamatory. The Flash Alert is not. Therefore, Diamond's motion to dismiss the defamation claim under maritime law, to the extent such a claim exists, is GRANTED.

Diamond additionally requests dismissal of all of SSI's other claims because they are based on the alleged falsity of the Flash Alert, and the Flash Alert is not false. The briefing provided on this issue is, however, incomplete. The court therefore DENIES Diamond's motion to dismiss SSI's other counterclaims.[4]

---

[4] Diamond is free to file a renewed motion to dismiss the other causes of action, but if it elects to do so, the court expects complete briefing—with discussion of the specific claims that Diamond requests be dismissed and citations to cases supporting Diamond's arguments as to each claim.

## IV. Conclusion

SSI's motion to dismiss (Dkts. 5, 15) Diamond's common-law indemnity claim is GRANTED. Diamond's motion to dismiss (Dkts. 8, 20), to the extent it seeks dismissal of SSI's defamation counterclaims, is GRANTED. SSI's defamation counterclaims under Texas, Louisiana, California, and maritime law are hereby DISMISSED WITH PREJUDICE. Diamond's motion to dismiss (Dkts. 8, 20), as it relates to SSI's other claims, is DENIED. Diamond's motion for an oral hearing (Dkt. 21) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on January 26, 2012.

_____
Gray H. Miller
United States District Judge